## ASAHEL S. MANSFIELD *vs.* INHABITANTS OF STONEHAM.

The *St.* of 1855, *c.* 470, § 2, having provided that sales of spirituous and intoxicating liquors by the state agent to town and city agents "shall be made for cash, and at a price not exceeding an advance of five per centum upon the actual cost," liquors so sold must be paid for on delivery, and no action lies by the state agent to recover of the town the price of liquors not so paid, although the town has received the value thereof; and in such an action, evidence of a custom among merchants to sell such goods for cash payable within thirty days is inadmissible.

ACTION OF CONTRACT by the state agent appointed under the *St.* of 1855, *c.* 470, to recover the value of a quantity of spirituous and intoxicating liquors sold to the defendants' agent, appointed under the *St.* of 1855, *c.* 215, for the purchase and sale of such liquors.

At the trial in the court of common pleas in Middlesex, at December term 1858, the defendants objected that the sale was made upon credit, and in violation of these statutes. The plaintiff contended that he was authorized to sell according to the custom of merchants, which was cash within thirty days; and *Sanger*, J. so ruled, and admitted evidence to prove the custom. The jury returned a verdict for the plaintiff; and in answer to a question from the court, said that they found the liquors had been sold upon credit. The defendants alleged exceptions.

*A. B. Underwood*, for the defendants.

*I. S. Morse*, for the plaintiff. The contract is legal and binding at common law, and will be enforced unless there is some express statute against the plaintiff's right to recover. The *St.* of 1855, *c.* 470, § 2, directs that " all said sales shall be made for cash, and at a price not exceeding an advance of five per centum upon the actual cost," but does not furnish any legal defence to a town which has received and had the benefit of the liquors. It does not affect the contract of sale, but is merely directory to the agent as to the manner of selling. *Lowell* v. *Hadley*, 8 Met. 180. It does not require cash before delivery of goods, but that the goods should be sold for money only, and at such prices as they could be obtained for, for cash on delivery. Its object is that the agent should obtain only five per cent. advance on the cost. *Williams* v. *Tappan*, 3 Foster, 385. *Harris* v. *Runnels*, 12 How. 84.

SHAW, C. J. Whether the agent appointed by a city or town, according to the *St.* of 1855, *c.* 215, § 5, is so far an agent of the town as to bind the town by his acts and contracts in any case, is a grave question, to be decided when it arises. He is a public officer, appointed by officers of the city or town; his duties are prescribed, and his powers defined and limited, by law. But we think that question does not properly arise in the present case.

Supposing the town agent of Stoneham was the agent of the town to make purchases on its account, he was an agent with limited powers. The only statute which authorizes the sale by the state agent to the town agent — the only statute which, in

fact, prevented the sale in question from being a sale in viola-tion of law and absolutely void — expressly provides " that all said sales shall be made for cash, and at a price not exceeding an advance of five per centum upon the actual cost." *St.* 1855, *c.* 470, § 2.

This act was not only known to the plaintiff, as all public acts are presumed to be known, but it was an act made for the guid-ance and government of the office which he had accepted. It directed the terms of the only valid contract which the statute authorized the parties to make. This law was made in pursu-ance of a course of policy specific and peculiar. No usage respecting the dealing of merchants in the sales of ordinary mer-chandise, the traffic in which is lawful, and the profits of which are not limited, can have any influence in controlling an express-provision of statute. The town agent is to make no profit. His emolument is to be provided for by the city or town.

The distinction between the powers of a general and special agent are well understood. If a special agent goes beyond the scope of his authority, his principal is not bound by his acts, and the party who deals with him must, on his own responsibility see that the agent has authority to the extent to which he pro-fesses to act. If a town agent can in any sense be regarded as the agent of the town to make purchases, his authority is lim-ited to purchases for cash. He can make no purchase on credit, and that is known to the seller. If the seller delivers the articles sold, without the payment in cash, he does it in his own wrong, and cannot look to the principal. If he receives the pay, of course the debt is satisfied, and he has no further claim upon anybody.

It is a very old rule of the common law, that if a man send his servant with ready money to buy meat or other goods, and the servant buys on credit, the master is not chargeable. It is only when the master has accredited him to pay for goods so bought on his credit, and because the master has thus accredited him with the trader, that the master is liable if the servant sent with the cash abuses his authority, keeps the money, and causes the goods to be charged to his master. 1 Show. 95.

*Exceptions sustained.*

At the second trial in the superior court at December term 1860, before *Brigham*, J., there was evidence that the liquors were sent to the town agent upon orders left by him in person or by expressmen, who received the liquors and transported them to the place of the liquor agency in Stoneham, where they were disposed of in the usual course of business of the agency, and the liquors or their proceeds accounted for by the agent to the defendants upon the termination of his agency.

There was no evidence that any specific or other credit was agreed upon between the plaintiff and the town agent at the time of the ordering or delivery of the liquors; but it appeared that bills of the liquors after each delivery were sent by mail immediately, and came to the hand of the agent, and had not been paid.

The plaintiff testified that the liquors were sold for cash, and that credit was not asked for or promised or intended to be given, that payments were made by the agent for all liquors previously purchased by him of the plaintiff, and that once during their dealings the agent said to him that he might send along goods, and the money should be sent as soon as the bills were received.

The plaintiff asked that the jury might be instructed that he could maintain this action if he was the duly authorized state commissioner for the sale of intoxicating liquors to town agents, and the duly authorized agent of the defendants ordered these liquors to be sent by express, and they were sent with a bill of the same and received by the town agent and appropriated to the use of the town, and the sale was intended by the plaintiff to be for cash and not on credit, but the town agent neglected to send the money, and kept the goods; or, if the plaintiff was the state commissioner for the sale of liquors, and acted as such, and the defendants by their agent ordered these liquors, and they were sent to and received by the town agent, without any agreement for credit, and with the full understanding by both the agents that the sales were for cash.

The judge declined to give the instructions requested; and instructed the jury, " that if the agent of the defendants purchased liquors of the plaintiff on credit, notwithstanding he

received and disposed of such liquors in the exercise of his office as the agent of the town of Stoneham, the defendants would not be liable for the price of the liquors thus purchased; that if the agent of the defendants purchased liquors of the plaintiff, which were thus received and disposed of, not upon a specific or other credit, but with an understanding that the same should be paid for soon after or immediately after their delivery to suit the purchaser's convenience, the town would not be liable for the price of such liquors, nor would such a sale be a sale for cash within the meaning of the law; and that if the agent of the defendants purchased liquors which were thus received and disposed of, and there was no payment therefor at the time they were delivered to him, or to the expressman receiving the same upon his order, there was not a sale of the liquors for cash, within the meaning of the law."

· The jury returned a verdict for the defendants, and the plaintiff alleged exceptions, which were argued and decided in January 1862.

*Morse*, for the plaintiff.

*C. Allen & J. C. Davis*, for the defendants.

METCALF, J. On this bill of exceptions the court have only to apply to the evidence, which is therein set forth, the law as it was announced when this case was formerly before us. It was then decided that *St.* 1855, *c.* 470, § 2, which requires that "sales" of spirituous and intoxicating liquors, by the state agent to town and city agents, "shall be made for cash," is not to be construed by the usage of merchants respecting what are termed "cash sales" of ordinary merchandise, but must be held to mean that the seller should not deliver the liquors sold, without payment in cash. The effect of that decision is, and was intended to be, that the state agent has no authority to sell liquors upon any credit, however short, given to the purchaser; that sales by him are lawful only when he receives payment in cash before or at the time of the delivery of the liquors. But the evidence in the present case was, that the plaintiff delivered the liquors specified in his declaration, without receiving or requiring payment in cash before, or concurrently with, the delivery.                    *Exceptions overruled.*